### ROBERT HUNTER v. A. P. HAMILTON.

REMEDY OF PLEDGEE— *Disposition of Pledge—Agreement of Parties.* The remedy of the pledgee, and the disposition to be made of a pledge of commercial paper upon default or other contingency, may be regulated by the agreement of the parties, where such agreement is not fraudulent, or against statute or public policy.

*Error from Wilson District Court.*

THE opinion states the nature of the action and the material facts.

*Geo. P. Uhl,* for plaintiff in error:

The holder of negotiable paper as collateral security cannot sell the same, but must sue and collect. 1 Dan. Neg. Inst.,

§ 833; Story, Bailm., §§ 318, 321; 1 Chit. Cont., p. 670; *Luck-etts v. Townsend*, 3 Tex. 119; *Cortelon v. Lansing*, 2 Cain. Cas. 200; 2 Pars. Cont. 111, 118, 119; *Jennison v. Parker*, 7 Mich. 355.

Pawnee cannot sell pledge of negotiable note (and an agreement to that effect is void), but must sue and collect on note. 2 Story, Eq. Jur., §§ 1008, 1009, 1019, 1031; Edw. Bailm., §§ 283, 293, 320; Story, Bailm., §§ 318, 321, 345; *Wheeler v. Newbould*, 16 N. Y. 392; *Markham v. Jandon*, 41 id. 235; *Roberts v. Thompson*, 14 Ohio St. 1.

On September 25, 1889, more than one month after the $250 became due, White mortgaged to G. E. Williams considerable property to secure $175; and on October 24, 1889, mortgaged to Cross another large amount of property to secure $495.50, showing clearly that with ordinary diligence defendant, Hamilton, could have collected the note; and no principle is better settled than that the holder of collateral security must use due diligence to collect. *Semple v. Detwiler*, 30 Kas. 386.

The law gives the holder the right to sue in his own name, and he ought to be required to properly use the right so given him. Story, Bailm., § 321; *McCrum v. Corby*, 11 Kas. 464; *Williams v. Norton*, 3 id. 295.

*S. S. Kirkpatrick*, for defendant in error:

That the holder of negotiable paper as collateral security cannot sell it, but should sue and collect it, is true, as a general rule. But this general rule does not deprive the parties interested from disposing of the collateral otherwise if they choose. In other words, the parties may contract to dispose of the collateral in any manner that suits their convenience, or is acceptable to both, as was done in this case. I know of no rule of law that abridges the right of parties to contract for the disposition of a promissory note, although it may be pledged at the time. In the case of *Roberts v. Thompson*, 14 Ohio St. 1, it is expressly held, that the rule requiring the pawnee of commercial paper to sue is always subject to the special agreement of the parties.

Hamilton, with the consent of the owner of the note, was authorized to sell the same, notwithstanding the existence of the general rule. See *Iron Co. v. Brick Co.*, 82 Ill. 584; *Brown v. Hiatt*, 1 Dill. 372; *Roberts v. Thompson*, 14 Ohio St. 1; *Fire Ins. Co. v. Dalrymple*, 89 Am. Dec. 779; *Bryson v. Rayner*, 90 id. 69; *Bast v. National Bank*, 101 U. S. 93; *Cooper v. Simpson*, 41 Minn. 46.

. Counsel for plaintiff claims, in substance, that the maker of the note, White, mortgaged his property after the maturity of the note, became insolvent, and consequently Hamilton is liable in failing to use due diligence to collect the collateral. With reference to this proposition, the rule is well settled that one holding negotiable paper as collateral security to a debt, in the absence of some special agreement to the contrary, must use reasonable diligence to collect it at maturity; and if through his negligence the debtor becomes insolvent, he must make good the loss. In this case, no such issue was presented by the pleadings.

The opinion of the court was delivered by

JOHNSTON, J.: Robert Hunter brought this action against A. P. Hamilton to recover damages for the alleged wrongful sale and disposition of a pledge. The pledge was a promissory note for $250, executed by James H. White in favor of D. S. Kennett, who turned it over to Hamilton as collateral security for the payment of an indebtedness of $52, which Kennett owed Hamilton. Kennett sold the note to the plaintiff, Hunter, subject to the claim of Hamilton for $52, the payment of which Hunter assumed. White failed to pay the note when it became due, but no steps were taken by Hamilton to enforce its collection. Hamilton afterward sold the note for the amount of the debt which it was given to secure. Hunter claims that when the note became due he urged Hamilton to enforce the collection against White, by suit if necessary, but he refused, and subsequently sold it without authority, or the taking of any legal steps for its collection. The claim of Hamilton was that White, the maker of the collateral note,

was insolvent; that Hunter was repeatedly requested to pay the Kennett note, which he had assumed, and to take up the collateral note, but he declined, saying he would not invest any more money in White's paper, and that Hamilton might sell it to anyone who would pay the amount of the Kennett debt. He claims that, in pursuance of this authority, he sold it for that sum, and at once informed Hunter of what he had done, who responded that the sale was satisfactory to him, but that afterward Hunter tendered the amount of the debt secured and demanded the collateral note. The claim of Hamilton was sanctioned by the jury upon sufficient testimony, and hence we are relieved from any further concern as to the findings. If there was a wrongful disposition or conversion of the note, Hunter was entitled to the difference between the value of the note and the debt for which it stood as a pledge. He insists that Hamilton could not sell the pledge with or without authority from him, and that the only legal course was to collect the note, apply sufficient of the proceeds to the debt due, and pay over any residue to him. This position is not tenable. The disposition to be made of a pledge, in case of default or in any other contingency, may be controlled by the agreement of the parties, providing such agreement be not fraudulent, is not in contravention of statute, nor against public policy. In the absence of an agreement as to the remedy to be pursued, a pledgee may ordinarily, upon default, sell any chattel deposited with him as a pledge; but a different rule has been held in some courts in respect to a pledge of commercial paper as collateral security for the payment of a debt. By some of the authorities cited, it is held that, without express authority, the pledgee cannot sell the paper, but that it is his duty to collect it when it falls due, apply enough of the proceeds to pay his debt, and then return what remains to the pledgor. (*Trust Co. v. Rigdon*, 93 Ill. 458; *Zimpleman v. Veeder*, 98 id. 613; *Fletcher v. Dickinson*, 7 Allen, 23; *Roberts v. Thompson*, 14 Ohio St: 1; Dan. Neg. Inst., § 833.) Upon this question there is a diversity of opinion, some of the authorities holding that there are no good

reasons to sustain such an exception. (*Porter v. Thompson*, 10 R. I. 1; *Brightman v. Reeves*, 21 Tex. 70; *Davis v. Funk*, 39 Pa. St. 243.) We are not called upon, however, to determine whether Hamilton had a right to sell the note independent of an agreement, as the issue presented and tried was, whether Hunter authorized Hamilton to make the sale, and this issue has been resolved by the jury in favor of Hamilton. The authorities are uniform upon the question that the disposition to be made of a pledge may be regulated by the contract of the parties. The case was fairly submitted to the jury, and the law governing it correctly stated by the court in its charge.

We find no error in the record, and hence the judgment of the court will be affirmed.

All the Justices concurring.